### (August 4, 1983)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN WILLIAM HOPKINS, Appellant. — Appeal from a judgment of the County Court of Fulton County (Albanese, J.), rendered March 12, 1981, upon a verdict convicting defendant of two counts of the crime of murder in the second degree and one count of the crime of rape in the first degree. This appeal concerns defendant's conviction of the rape and murder of 17-year-old Sherrie Ann Carville on October 22, 1978. Defendant's major points on appeal relate to the trial court's failure to suppress incriminating oral and written statements made to the State Police and to a Montgomery County undersheriff during the morning and early afternoon of August 16, 1979, and an oral admission made to a jail guard at about 10:00 that evening. The State Police had initiated contact with defendant the previous evening in connection with their investigation of the reported stabbing and kidnapping of Celene Edwards earlier that day. After defendant was interrogated and then formally arrested for the crimes against Edwards, but before his arraignment on those charges, he was further interrogated and gave confessions concerning the rape and murder of Carville and

concerning the rape and murder of Cecelia Genatiempo in 1976. The suppression hearing and trial of defendant on the Genatiempo charges were concluded prior to the proceedings in the instant case. Defendant's conviction for the murder of Genatiempo and the trial court's decision denying suppression of his confession in that case were upheld on appeal (*People v Hopkins,* 86 AD2d 937, affd 58 NY2d 1079). While that appeal was still pending before this court, the suppression hearing in the instant case took place. By stipulation, the entire testimony in the Genatiempo suppression hearing was incorporated in the hearing on defendant's motion to suppress his confessions to the Carville crimes. The only additional proof adduced at the suppression hearing in the instant case consisted of conflicting testimony of experts concerning the validity and effect of the procedures used by the State Police in administering a lie detector test to defendant before he made any incriminating statements. Following the suppression hearing, the trial court held that the additional evidence introduced did not require any modification of its findings and conclusions on the same issues in its prior decision upholding defendant's confession to the Genatiempo murder. The court, therefore, reaffirmed its prior decision and denied defendant's motion to suppress. At the conclusion of the trial, defendant was found guilty as indicted. Defendant's initial attack upon the admissibility of his confession is based upon a contention that he was illegally seized by the State Police when he was transported from his home to the Fultonville barracks and that, therefore, his unlawful arrest fatally tainted any subsequent confession. The suppression court expressly rejected defendant's claim that there was an illegal initial seizure: "The Court finds defendant's actions throughout the entire time he was with law enforcement officers [until he was arrested at 2:15 A.M. at the Loudonville State Police barracks] to be knowingly and not involuntarily made." In our affirmance of defendant's conviction of the Genatiempo murder, we held: "In our view, the evidence is sufficient to support the trial court's finding that defendant voluntarily went to, and remained at the police station. Neither his statements nor the consent search were invalidated by an illegal detention" (*People v Hopkins,* 86 AD2d 937, 938, *supra*). There was nothing contained in the additional evidence submitted at the suppression hearing in the instant case which bore on the issue of whether defendant's accompanying the State Police to the barracks and remaining there with them until his formal arrest was voluntary or custodial. Therefore, there is no basis in the record requiring us to deviate from our previous holding on this issue. Next, defendant contends that his confession should have been suppressed because his right to counsel had attached before it was obtained. He bases this claim on two alternative theories. First, he argues that since his arraignment on August 16, 1979 was originally scheduled for 9:00 A.M., presumably the felony complaint was filed at or before that time. Therefore, the commencement of formal legal proceedings, triggering his right to counsel, took place before he inculpated himself. This theory does not aid defendant. Incontrovertibly the scheduled arraignment which he relies upon was in connection with the charges on the Edwards crimes. Moreover, the scheduled arraignment never took place that morning and, as held by the Court of Appeals in defendant's earlier appeal, entry of counsel that morning was nothing more than an "inchoate intention" (*People v Hopkins,* 58 NY2d 1079, 1082, *supra*). Therefore, assuming, *arguendo,* that the Edwards felony complaint had in fact been filed that morning, absent actual entry of counsel the pendency of that case did not bar interrogation concerning the Carville murder (*People v Kazmarick,* 52 NY2d 322, 324). Defendant's alternative argument, that the delay in arraignment was for purposes of obtaining defendant's confession and should, therefore, trigger his right to counsel, is similarly unavailing. The identical argument was made in defen-

dant's earlier appeal and was rejected by this court, wherein we held that: "While the intervening revelations concerning the Carville and Genatiempo investigations may have sidetracked the Edwards arraignment, we cannot say that the delay was improper or in any way designed to avoid defendant's right to counsel" (*People v Hopkins*, 86 AD2d 937, 939, *supra*). Likewise, there was no new evidence introduced at the suppression hearing in the instant case which would cast any additional doubt sufficient to overturn the trial court's determination, also upheld on the earlier appeals, that defendant's postarraignment admission to the jail guard later that evening was admissible as a spontaneous, voluntary statement. Finally, with respect to the admissibility of defendant's confession, we find no basis in the additional evidence concerning the lie detector test procedures for disturbing the trial court's adherence to its original determination that the confession was obtained voluntarily from defendant. There was conflicting testimony as to whether those procedures were either deceptive or coercive, creating nothing more than an issue of credibility within the province of the trial court to resolve. Defendant's remaining points do not merit extended discussion. His objection to the permitted scope of his cross-examination by the District Attorney is identical to that raised in his earlier appeal, and rejected as at most harmless error (*People v Hopkins*, 58 NY2d 1079, 1082-1083, *supra*). Nor did the prosecutor's references to defendant's credibility in summation, taken in the context of the entire summation and of the trial itself, deprive defendant of a fair trial. We have also examined the arguments contained in defendant's *pro se* brief and find them equally without merit. Accordingly, defendant's conviction should in all respects be affirmed. Judgment affirmed. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Levine, JJ., concur.